In the Matter of Charles J. Greenberg, Petitioner, against John F. Mahoney, as Commissioner of Health of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, September 15, 1952.

*Menahem Stim* for petitioner.

*Denis M. Hurley, Corporation Counsel (Arthur J. Goldsmith* of counsel), for respondents.

Moss, J. Petitioner seeks an order under the provisions of article 78 of the Civil Practice Act, to annul the determination of respondents denying the application of petitioner for a permit to conduct an X-ray laboratory. The application was made pursuant to section 107 of the Sanitary Code of the City of New York and the regulations promulgated thereunder.

The laboratory is known as the Practitioners X-Ray Laboratory and conducted at 699 Ocean Avenue, Brooklyn, N. Y. It is owned by Practitioners X-Ray Laboratory, Inc., a domestic corporation, the stock of which is held by laymen. Petitioner stated on October 16, 1951, at the hearing held before the board of review of respondent department of health, that the individuals owning the same were named Ludegate and Rubinoff who were not physicians or chiropractors. One Martin I. Phillips is the managing agent of the corporation. Petitioner was engaged to be the director of the laboratory effective as of June 8, 1950. Petitioner is a physician who was duly licensed on January 30, 1936, to practice medicine. He had been doing X-ray work almost from the time he opened his medical office. Respondents admit that petitioner is fully qualified by training and education to operate an X-ray laboratory wherein radiographs are taken, diagnoses made or human beings examined by X ray. Respondents also admit that the equipment of the laboratory fully complies with pertinent regulations governing the maintenance of X-ray laboratories in New York City.

On the effective date of petitioner's employment, petitioner applied for a permit to conduct an X-ray laboratory at the

aforesaid premises under the said section of the sanitary code which requires that every X-ray laboratory shall be in charge of a duly licensed physician or other person licensed under the laws of New York to diagnose and treat disease. Incidentally, petitioner had been granted a permit to conduct the same X-ray laboratory at the identical premises during a prior period but petitioner voluntarily surrendered the permit for business reasons. Immediately after the filing of the application on June 8, 1950, petitioner entered upon his duties as director of the X-ray laboratory. This was permitted under a policy of respondents whereby a duly licensed physician filing an application for such a permit is permitted to enter upon his work pending the determination of the application.

Hearings were held before the board of review of the department of health on October 16, 1951, and December 13, 1951. On January 14, 1952, the application was denied by respondent commissioner of health. An appeal was taken by petitioner to the board of health of the department of health. A hearing of the appeal was had by respondent board of health on February 4, 1952. Subsequently, at the meeting of April 14, 1952, respondent board of health affirmed the decision of respondent commissioner of health denying the application filed on June 8, 1950. Minutes of all hearings, except the meeting of April 14, 1952, at which final decision was made, are annexed to respondents' formal answer.

The decision of the board of health (Exhibit " C " annexed to moving papers) held that the commissioner of health in denying the application for a permit did not take such action because of the fact that " the applicant would among other things perform x-ray work for chiropractors ". The board said that " the record does not show that the Commissioner based his action on this ground." (See second paragraph, opinion, Board of Health, April 14, 1952.) The basis for the board's decision, specifying other grounds, is succintly shown in the last paragraph of its opinion, as follows: " The petitioner has not shown such regard for the public health and for the standards of professional conduct prescribed by law as to require the Board of Health to hold that the judgment of the Commissioner in denying the application was erroneous. Accordingly that decision is affirmed."

The court has read the minutes of all hearings a number of times. With the greatest respect for the learned and distinguished members of the board of health, the court is never-

theless constrained to disagree with the board of health as to the basis or foundation for the decision of the commissioner of health. The following excerpts are samples of minutes which have persuaded the court to this view. At the very beginning of the initial hearing on October 16, 1951, before any statement whatever was made by petitioner and prior to any evidence being adduced as to the conduct or operation of the laboratory the following transpired (Exhibit No. 2, Minutes, Oct. 16, 1951, first page. Reference to "Dr. Greenberg" relates to Dr. Morris Greenberg, Acting Chairman, Board of Review, and not to petitioner bearing same name. Reference to "Mr. Ginsburg" relates to the supervising inspector):

"*Mr. Ginsburg:* The previous Board of Review meeting and the last deliberation of the Board of Health set a policy which we implemented by requesting denial of this application. *The only circumstances that were different* from the previous case was that this was a different applicant.

"*Dr. Greenberg:* What is the policy that was set?

"*Mr. Ginsburg:* The policy that was outlined — I have a copy, it is a little lengthy — this is a previous Board of Review meeting and the following deliberations of the Board of Health over three meetings which Mr. Hollander and members of our Bureau went over in detail sustained this policy of denying a permit to operate an x-ray laboratory where chiropractors refer patients and the reports on x-ray radiographs are sent to chiropractors as an aid in spinal manipulation, because on the ground that such a practice would be in aid of manipulations which are against the public policy of this day (state) since chiropractic is not recognized by the State. I think that is contained in the last couple of paragraphs."

The acting chairman, Dr. Morris Greenberg, then read as a precedent the decision of the board in the case of one Dr. Edward Parrish who was denied a permit for the sole reason that the granting thereof would aid the practice of chiropractic. In fact, virtually the entire hearing, as shown by the minutes, was devoted almost exclusively to the chiropractic angle. The emphasis on this point is shown by the following (Exhibit No. 2, Minutes, Oct. 16, 1951, 11th page):

"*Mr. Hollander* (Chief of the Legal Division): There has to be a first time. We didn't pick out this particular case because of any personal reasons. It happens this is the first laboratory that I happened to sit on in the Board of Review. I think that it is the illegal practice of chiropractic against public policy."

" *Mr. Hollander:* If it were a question of our trying to revoke it, it would be entirely different but *we don't want to start by issuing a permit now.* If you think it wrong you have a perfect right to —."

and at the bottom of the 12th page and top of the 13th page:

" *Mr. Hollander:* I have no feelings one way or the other for or against chiropractic. I am not a doctor but I say that it is against public policy to illegally practice chiropractics. Now I say *we shall not permit* a situation where it might be said that we gave assistance in the illegal aid of chiropractics. We have got to try to prevent harm to the public."

At the further hearing of the board of review held on December 13, 1951, the subject of the practice of chiropractic again became the principal issue in the minds of the members of the board of review as shown by the following (Exhibit No. 3, Minutes, Board of Review, Dec. 13, 1951, bottom of 14th page and top of 15th page):

" *Mr. Hollander:* Let's put it this way. This Board is of the opinion that general chiropractors do practice medicine illegally and if we try to impose upon you the condition that you would not accept patients from chiropractors what would you say to that?

" *Dr. Greenberg:* (petitioner): I wouldn't have the right to reject them as medical director.

" *Mr. Stim* (Counsel for petitioner): Mr. Hollander, may I answer for Dr. Greenberg. He will reject that condition. I would rather prefer that you reject the application because of the fact he will not assume that he has the right to reject any applicants."

And similarly at the bottom of the 15th page:

" *Mr. Hollander:* There is no question in your mind, Dr. Greenberg, that if we granted you this permit that you would still accept chiropractors.

" *Dr. Greenberg:* I would have to do it under all circumstances until I could be shown that it was an illegal act. At the last meeting you brought out a point that that is the ground on which you are possibly thinking about in so far as basing a rejection or acceptance — public policy — and it would be against public policy to grant the permit which would be furthering the ends of chiropractic. And I asked you a question and that was this. How would you be advancing the end of medicine for public welfare by having no laboratories take x-rays for any chiropractors, and if chiropractors weren't

permitted to take x-rays then you'll have to admit some will treat without x-rays and treating them without x-rays is a detriment to the patient's welfare.''

Later on the same page, Mr. Hollander stated, '' If I have my way around here I will see to it that every laboratory that has a permit from the Board of Health does not accept patients from chiropractors ''; whereupon Dr. Morris Greenberg, acting chairman stated: '' This is a general principle that has been established recently.''

From the foregoing it is quite evident that the court cannot sustain the decision of the board of health which held that the basis of the action of the commissioner of health in denying the permit was not predicated on the fact that petitioner would perform X-ray work for chiropractors.

The minutes of the board of health, held on February 4, 1952, on appeal from the decision of the commissioner of health, also disclosed that the subject of chiropractors was very much in the minds of the members (see Exhibit No. 4).

Much was made of the fact that petitioner failed properly to supervise the laboratory. However, respondents have admitted that an applicant for a permit need not be the owner of the laboratory. Where therefore an applicant is not the owner it should not be expected of him that he supervise the business end of the laboratory. The important thing from the standpoint of the safety of the public is that he examine every patient and that no X-ray pictures are taken without his direction, supervision and presence. In this respect, the evidence indicates that although the laboratory is open from 10:00 to 5:00 it is the practice of the laboratory to make appointments for X-ray work only during the hours of 9:30 to 12:30, during which period petitioner is present from one to three hours daily, and no patients are accepted for X rays the balance of the day. As stated by petitioner on his interrogation by Dr. Emerson at the hearing on appeal before respondent board of health (Ex. 4, page 13), petitioner sees every patient that comes to the laboratory for examination.

The evidence also shows that chiropractors, podiatrists and medical doctors or physicians refer work to the laboratory, and that the approximate proportion of X rays taken of patients referred by chiropractors is about three to one in favor of chiropractors, or percentage-wise is estimated at 60%.

The court is of the opinion that the decision of the board of health that petitioner has not shown proper regard for the

public health and for the standards of professional conduct, is not supported by the record. This is begging the question based on the board's own conception of the right of a chiropractor to be furnished with radiographs. Furthermore no yardstick or objective tests have been set up to establish the measure of, or proper regard for public health and standards of professional conduct. This finding of respondent board of health is therefore reversed and annulled as having been predicated on nebulous, vague and subjective standards.

There is left for decision the question as to whether respondents may decline to issue a permit for an X-ray laboratory to a physician who admittedly will accept patients from chiropractors for the purpose of taking X-ray pictures of them and thereafter transmitting the reports thereof to the chiropractors.

In *Matter of Sausser* v. *Department of Health of City of New York* (242 N. Y. 66) the Court of Appeals directed the board of health to issue a permit to conduct an X-ray laboratory to a chiropractor. Obviously such a laboratory would be patronized by other chiropractors. If a permit is allowed a chiropractor, a fortiori it should be granted a physician duly licensed to practice medicine. The *Sausser* case was cited with approval in *People* v. *Maybrook* (276 App. Div. 192). Although a change was made to section 107 of the Sanitary Code since the decision of the Court of Appeals in the *Sausser* case, the amendment has no new application to the granting of a permit to a physician. The change merely precludes a person not licensed to diagnose and treat disease, from obtaining a permit to operate an X-ray laboratory.

The court is therefore constrained to hold that respondents acted arbitrarily in declining a permit to petitioner and that petitioner is entitled to have his application granted. An order may therefore be settled on notice directing the issue of the permit. However, in view of the able argument of the assistant corporation counsel appearing for respondents in opposition and his learned brief indicating among other things that the operation of the X-ray laboratory affects the public health of the people of New York City, the court on its own motion will stay the execution of the order to be entered on this decision until the hearing and determination of the Appellate Division on the appeal from the order, conditioned only upon such appeal being timely taken.